**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**SHARON MERRILL,**

        **Plaintiff,**

                                     **Civil Action 2:14-cv-262**

**vs.**                           **Judge James L. Graham**

                                     **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Sharon Merrill, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.     BACKGROUND

This matter involves Plaintiff's second application for disability benefits. Plaintiff initially filed for supplemental security income on July 25, 2006, alleging that she became disabled on December 15, 2003, at age 30. (R. at 59, 204.) After Plaintiff's initial application and request for reconsideration were denied, she requested a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 109-15.) An evidentiary hearing was held by Administrative Law Judge William L. Hafer ("ALJ Hafer"). ALJ Hafer determined that Plaintiff, despite numerous severe impairments, had the residual functional capacity to perform a

restricted range of light, unskilled work, including her past relevant work as a cashier.  (R. at 56-72.)  ALJ Hafer denied Plaintiff's applications on August 6, 2009 ("the first determination").[1] (R. at 56–72.)  The Appeals Council denied review in December 2010.  (R. at 73–77.)  Plaintiff did not appeal the first determination.

Plaintiff protectively filed a new application for benefits on October 26, 2010, alleging that she has been disabled since August 4, 2009, the day after ALJ Hafer issued the first determination.  (R. at 191-94.)  Plaintiff alleges disability as a result of lower back pain, leg problems, partially blocked bowel, knee pain, carpal tunnel, hernia, diabetes, asthma, high blood pressure, depression, and ADHD.  (R. at 239.)  After Plaintiff's second application was denied initially and upon reconsideration, she requested a *de novo* hearing before an ALJ.  ALJ L. Raquel Bailey Smith ("ALJ Bailey Smith") held a hearing on September 5, 2012, at which Plaintiff, represented by counsel, appeared and testified.  (R. at 34-50.)  Richard P. Oestreich, a vocational expert, also appeared and testified at the hearing.  (R. at 50-54.)  On September 18, 2012, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 7-21.)  On January 28, 2014, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  (R. at 1-5.)  Plaintiff then timely commenced the instant action.

---

[1]The Administration indicates that the date of the denial was August 3, 2009.  (R. at 227.)

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

Before ALJ Bailey Smith, Plaintiff testified that she gets her children off to school in the mornings and then does chores around the house for "roughly 5 to 10 minutes" before she has to sit down and take a break.  Plaintiff testified that she does some cleaning but that her mom or sister will come over to help with a more thorough cleaning.  She sometimes visits with her mother.  Plaintiff testified that she drives, but that her sister drove her to the hearing.  (R. at 37.)

Plaintiff testified that she cannot work because of pain in her shoulders and back (R. at 38); complications from her knee injury; (R. at 43); and numbness in her left limb all the way up to her shoulder.  (R. at 44.)  She testified that when she stands, pain shoots down her legs and hips.  Plaintiff stated that her knees catch when she walks and it hurts. (R. at 38.)  She added that she hurts all over. (*Id.*)  Plaintiff testified that she never has a day when she does not have pain. (*Id.*)  Plaintiff also testified to experiencing problems with recurrent hernias, noting "[i]t's been a real challenge to even be able to get back to somewhat normal."  (R. at 40.)  During the recurrent hernias she is not able to do as much during the day.  (R. at 41-42.)  Plaintiff stated that her knee catches, and that a couple weeks before the hearing, she fell as a result.  on her face.  She indicated that she had fallen twice within a two-week period.  (R. at 44.)

As to her daily activities, Plaintiff stated that she makes dinner and that sometimes her daughter helps her cook.  (R. at 48.)  Her father helps discipline her autistic son because he is stronger than she is.  (*Id.*)  Plaintiff testified that she is much slower with her activities on bad days.  (R. at 49.)  Plaintiff indicated that she has been restricted from lifting more than 10 to15 pounds.  (R. at 50.)  Plaintiff testified that could "hardly" open a jar.  (R. at 45.)  If she picks up a

gallon of milk, it may fall through her hand without her even realizing it.  (*Id.*)  She cannot "reach up high to grab stuff or to reach out and pick stuff up without having pain." (R. at  45.)

Plaintiff testified she stopped working when she had her first child in 1998.  She stated that, "at that time [she] wanted to be a stay at home mom."  She explained that her husband was working at that time.  (R. at 50.)

## B.    Vocational Expert Testimony

Richard P. Oestreich, testified as the vocational expert ("VE") at the administrative hearing.  (R. at 50-54.)  The ALJ proposed two hypotheticals regarding Plaintiff's residual functional capacity ("RFC") to the VE.  Assuming a person of Plaintiff's age, education, and work experience, with an RFC to perform light work with the following limitations:  occasional stooping, kneeling, crouching and crawling, but never climbing ladders, ropes or scaffolds; may never work at unprotected heights or around dangerous machinery; must avoid constant exposure to dust, fumes, gasses and other common respiratory irritants; is able to frequently operate hand controls and perform fine or gross manipulation bilaterally; may occasionally reach overhead; and is able to perform unskilled work involving one to three step tasks with few rigid deadlines. The VE testified that individual could perform the requirements of about 50 percent of light unskilled work which equates to an ability to perform approximately 5,000 unskilled light jobs in the regional economy of south central Ohio, including work as a sorter, retail warehouse worker, and inspector.  (R. at 52.)  In her second hypothetical, the ALJ asked the VE to consider, in addition the previous RFC, the individual could perform sedentary work and must be allowed to stand and stretch for a minute or two at the work station about every 45 minutes as needed to

4

remain on task.  The VE testified that hypothetical person could perform 1,500 sedentary, unskilled jobs, including work as a hand packer, inspector and assembler.  (R. at 53.)

When cross-examined by Plaintiff's counsel, the VE acknowledged that if Plaintiff missed more than one day per month, it would "probably" be work preclusive.  (R. at 54.)

### III.    MEDICAL RECORDS

**A.    Physical Impairments**

**1.    River View Imaging Center**

A lumbar spine MRI taken on May 9, 2007, showed disc degeneration at L1-2 and L5-S1; reactive degenerative edema, central disc herniation, and mild spinal stenosis at L2-3; and central disc protrusion at L5-S1 with mild foraminal narrowing.  (R. at 438.)

X-rays of the knees taken on June 13, 2007, showed small osteophytes in the medial compartment and femoral patellar articulations of the left knee; and small osteophytes in the femoral patellar articulation and medial compartment, and minimal joint narrowing of the medial compartment in the right knee.  (R. at 349.)

An x-ray of her right ankle taken on November 11, 2008, revealed lateral soft tissue swelling, and a tiny avulsion versus accessory ossicle.  (R. at 351.)

**2.    Treating physical medicine and rehabilitation specialist, John A. Walter, D.O.**

Dr. Walter initially saw Plaintiff on May 25, 2007, for complaints of chronic back and leg pain.  (R. at 431.)  Plaintiff described her back pain as a constant dull ache with occasional referral into her hips.  She described her leg pain as occurring from the knees distally which was worse at night. She also had some occasional numbness in the legs.  On examination, Dr. Walter noted Plaintiff performed transitions smoothly from seated to standing position.  She was able to

5

walk on heels and toes and perform heel to toe walking without difficulty or ataxia.  Dr. Walter found full cervical and lumbar range of motion.  Plaintiff did display "much discomfort" with lumbar range of motion and "some discomfort" in the posterior hips.  Plaintiff exhibited functional upper limb and shoulder range of motion bilaterally.  Hip range of motion in log roll was full and non-painful.  Dr. Walter also found full, non-painful knee range of motion bilaterally.  Straight leg raises were negative bilaterally.  Dr. Walter noted some hamstring tightness primarily on the right side.  Plaintiff exhibited 5/5 lower limb strength bilaterally; 5/5 upper limb strength bilaterally;  2+ reflexes throughout upper limbs; and 2+ reflexes throughout lower limbs.  He noted Plaintiff had some diminished light touch sensation in the first 3 digits of the left hand and some diminished sensation in the lower limbs.  Dr. Walter observed some difference between left and right with the left foot being somewhat less apparent.  (R. at 432.) Dr. Walter assessed lumbar disc degeneration, lumbar spondylosis without myelopathy, disc displacement unspecified, lumbago, obesity, unspecified, peripheral neuropathy unspecified and sacroiliitis.  Dr. Walter reported that he did "not see clear clinical signs for a radiculopathy."  Dr. Walter prescribed Neurontin and Skelaxin and recommended a course of physical therapy to address lumbar core stabilization, flexibility, and strengthening.  (*Id.*)

On June 27, 2007, Plaintiff underwent a lower limb EMG.  Dr. Walter found a normal electrodiagnostic evaluation of the lower limbs and no evidence of lumbar radiculopathy, plexopathy, or peripheral neuropathy.  (R. at 595-97.)

An MRI of Plaintiff's left knee taken on September 8, 2008, revealed a tear of the medial meniscus and chondromalacia in the medial compartment articular cartilage associated with a joint effusion and popliteal cyst.  (R. at 439.)

On September 18, 2008, Plaintiff received a knee injection.  (R. at 598.)

X-rays of the cervical spine taken on March 4, 2009, showed disc space narrowing at the C6-7 level, indicating degenerative disc disease.  (R. at 440.)

On March 12, 2009, Dr. Walter performed an upper limb EMG which revealed carpal tunnel syndrome, and median neuropathy at the wrist, moderate on the right and moderate to severe on the left.  (R. at 599-602.)

In April and July 2010, Dr. Walter found 5/5 lower limb strength bilaterally with no light touch sensory deficits throughout the left lower limb, and minimal tenderness to palpation of the lumbosacral region.  Dr. Walter noted that Plaintiff remained notably less tender over the lower lumbar paraspinals and walked with a normal, narrow-based tandem gait pattern. Dr. Walter diagnosed lumbar spondylosis without myelopa, lumbar disc degeneration and lumbago.  (R. at 435-36.)

On October 28, 2010, Dr. Walter noted tenderness to palpation of the lumbosacral region and discomfort with lumbar extension.  Dr. Walter diagnosed lumbar spondylosis, lumbago, and knee osteoarthritis.  (R. at 437.)

Plaintiff received bilateral joint/nerve injections at L4-5 and L5-S1 in November 2010. (R. at 441.)

Plaintiff reported to Dr. Walter on February 23, 2011, that facet injections helped with pain.  She complained, however, she had multiple surgeries over the previous months that set her back.  She also reported numbness and tingling in the left lateral leg when she sits, such as when driving, and aching in both legs.  Plaintiff further reported increased carpal tunnel symptoms on the right side.  Dr. Walter noted discomfort with lumbar extension and ordered a lumbar spine

MRI due to her new leg symptoms that may indicate some disc pathology or foraminal stenosis. (R. at 603.)

The MRI of the lumbar spine taken on March 02, 2011, revealed transitional L5 vertebra with a hypolastic disc space at L5-S1; degenerative changes at L1-2; disc desiccation and loss of disc height at L2-3; type II discogenic end plate marrow changes in the adjacent end plates; and mild disc desiccation at L4-5; central and left paramidline disc protrusion, moderate left paramidline stenosis, with mass effect upon the extending left L2 nerve root, and mild facet arthropathy at L1-2. At L4-5, there was facet arthropathy, with minimal disc bulging. (R. at 605.)

Plaintiff received transforaminal lumbar steroid injections in the left L1 and L2 levels on March 22, 2011 and February 6, 2012. (R. at 554, 717.)

When seen for follow up on April 28, 2011, Plaintiff reported low back pain, knee pain, and posterior hip pain, but noted that the lumbar steroid injection has helped her low back and proximal hip symptoms. Dr. Walter noted that a lumbar MRI showed disc protrusion at L1-2 that was contacting the L2 nerve root. Dr. Walter diagnosed lumbar disc degeneration, disc displacement, and lumbar radiculitis. (R. at 604.)

On July 20, 2011, Plaintiff presented to Dr. Walter with new complaints of pain in her right shoulder and neck. (R. at 666.) An MRI of the right shoulder taken on August 26, 2011, showed a partial thickness tear of the supraspinatus tendon. (R. at 662.) On August 31, 2011, Dr. Walter examined Plaintiff following her MRI for continued right shoulder pain. He administered an injection into Plaintiff's right shoulder. (R. at 665.)

On January 31, 2012, Plaintiff reported the epidural injections were helpful for her back but the effects were wearing off.  She indicated that the should injection continued to be helpful.  She noted increased pins-and-needles sensation and increased back pain.  On examination, Plaintiff exhibited discomfort with seated straight leg raises on the left, pain with lumbar flexion at 30 degrees, and tenderness in the lumbar paraspinals.  Dr. Walter noted that Plaintiff had functional right shoulder range of motion.  He recommended another epidural injection.  (R. at 718-19.)

Plaintiff reported rubbing/pressure sensation in her legs, typically at night or when she is resting on April 30, 2012.  Dr. Walter noted pain with lumbar flexion at 30 degrees, and pain interfering with sleep.  (R. at 772-73.)

On June 13, 2012, Plaintiff indicated to Dr. Walter that her shoulder symptoms had been stable.  She noted no change in the back and leg symptoms, but that they had improved since the last injection.  Dr. Walter recorded that Plaintiff had functional right shoulder motion but discomfort with seated straight leg raise.  He indicated functional lumbar range of motion and that Plaintiff remained less tender in the lumbar area.  Plaintiff walked with a normal, narrow-based gait pattern.  (R. at 770-71.)  Dr. Walter noted that his practice would not be accepting Plaintiff's insurance provider, Caresource, any longer.  (R. at 771.)

**3.** **Treating surgeon Scott Johnson, M.D.**

On April 15, 2008, Plaintiff underwent an incisional hernia repair.  (R. at 481-82.)  On May 13, 2010, Dr. Johnson performed an evacuation, incision and drainage of  Plaintiff's recurrent abdominal wall hernia.  (R. at 411, 485.)

9

On September 8, 2010, Plaintiff had a CT scan of her abdomen and pelvis which showed small bowel loops that were dilated to the level of hernia and the radiologist noted a possible incarcerated hernia.  (R. at 384-85.)  On September 09, 2010, Dr. Johnson again operated on Plaintiff's hernia; with an open incisional hernia repair, debridement of abdominal abscess and excision suture.  (R. at 386, 487.)  On December 7, 2010, Dr. Johnson performed surgery for recurrent incisional hernia and incarcerated small bowel.  (R. at 472-73.)  On December 22, 2010, Dr. Johnson reported that Plaintiff had resumed limited activities, but no lifting and no physical exercise.  (R. at 633.)  Plaintiff reported shortness of breath, wheezing, and anesthetic problems.  (R. at 634, 659.)  On December 29, 2010, Dr. Johnson examined Plaintiff for a moderate amount of drainage following a hernia operation.  She was assessed with an infected postoperative seroma and given antibiotics, packing and gauze.  (R. at 636-38.)

On December 31, 2010, Plaintiff was hospitalized for complications with her hernia repair.  (R. at 639.)  She underwent drainage of postoperative abscesses with a postoperative diagnosis of infection and wound abscess.  (*Id.*)  On February 23, 2011, the physician assistant in Dr. Johnson's office advised plaintiff that she could return to normal activities.  (R. at 656.)

March and July 2011, abdominal and pelvic CT scans showed postsurgical changes but no intra-abdominal mass or acute findings.  (R. at 529-30, 669-70.)  Plaintiff underwent an incisional hernia repair, stitch abscess and drain placement in June 2012.  (R. at 775.)  In August 2012, Dr. Johnson found no hernias present and the incision was "healing well" from her June 2012 hernia repair.  (R. at 802-04.)

### 4. Fairfield Medical Center

Plaintiff underwent left hand carpal tunnel syndrome release surgery on October 22, 2009.  (R. at 425-26.)

On August 10, 2010, Plaintiff had an Ultrasound of her right upper quadrant which showed a diffusely hypocchoic liver, suggesting fatty infiltration.  (R. at 404.)

### 5. Treating family practice physician, Brian Ely, D.O.

Plaintiff treated with family physician, Dr. Ely from May 2010 until August 2011 for high blood pressure/ hypertension, high cholesterol, asthma, and allergies,  diabetes mellitus type II.  (R. at 443-57, 613-32, 671-55.)  A progress note from August 19, 2010 showed she had not been on medication for her high cholesterol and it was uncontrolled but that her high blood pressure was controlled.  Her diabetes was well controlled and she had lost a considerable amount of weight.  She was off her diabetic medication, Metformin.  (R. at 443-44.)

### 6. Consulting Neurologist, Elizabeth T. Walz, M.D.

Dr. Walz saw Plaintiff on June 3, 2010,  for reported tremors in Plaintiff's head and hands.  Plaintiff reported that her tremors lasted anywhere from 15 minutes to an hour, after which she felt wiped out.  Dr. Walz suspected the tremors were from a panic disorder related to her psychiatric conditions of anxiety and depression.  (R. at 576.)

### 7. H.C. Dr. Nataraj, M.D.

Plaintiff treated with Dr. Nataraj for allergies and asthma in April and November 2010. (R 695-98.)  She was found to have had mild restriction with airflow.  (R. at 698.) In November 2010, Dr. Nataraj found Plaintiff's asthma was "well controlled" with medication.  (R. at 695.)

### 8.    Ohio State University Medical Center

Plaintiff presented to the emergency room on March 17, 2011, for abdominal pain.  (R. at 526-40.)  She was found to have a diffuse, firm, small area of tenderness over a midline surgical scar, and tenderness in the middle back area.  (R. at 527.)  Plaintiff was diagnosed with collection in ventral subcutaneous fat, small bowel adhesions, and mild bowel dilation with fecalization.  (R. at 530.)

### 9.    Guatam Samadder, M.D.

Plaintiff consulted with Dr. Samadder in August 2010 for sleep problems.  (R. at 806-08.)  Given her history of obstructive sleep apnea, Dr. Samadder ordered a nasal C-PAP study.  (R. at 810-14.)  Dr. Samadder assessed obstructive sleep apnea and hypersomnia with sleep apnea and prescribed a C-PAP machine for Plaintiff.  (R. at 811-12.)

### 10.    Reviewing Physician, W. Jerry McCloud, M.D.

In February 2011, state-agency physician, Dr. McCloud reviewed the record and assessed Plaintiff's physical functioning capacity.  Dr. McCloud opined that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, stand and/or walk up to 6 hours in a workday, sit for about six hours in a workday, and that her ability to push and pull was unlimited.  (R. at 84.)  According to Dr. McCloud, Plaintiff had no other limitations.  (R. at 85.)

### 11.    Reviewing Physician, Benita M. Jackson-Smoot M.D.

Plaintiff's record was reviewed again in July 2011, by state-agency physician, Dr. Jackson-Smoot.  (R. at 97-99.)  Dr. Jackson-Smoot adopted the ALJ's August 6, 2009 RFC finding from her first determination on her previous application for benefits.  (R. at 99.)  Dr. Jackson-Smoot also found that Plaintiff cannot work in constant exposure to dust, fumes, gases

and other common respiratory irritants and no unprotected heights or dangerous machines. (R. at 99.)

## B. Mental Impairments

### 1. New Horizons

Plaintiff sought mental health treatment from New Horizons on May 12, 2010. (R. at 376-79.) Initially, Plaintiff reported she is depressed, she has no energy, feels tired, she spoke excessively, and has racing thoughts. (R. at 377.) She was diagnosed with major depressive disorder. (R. at 378.)

On September 23, 2010, Plaintiff reported she was not working due to issues with her back and the need to be available for her 11 year old autistic son's caregivers. She reported she was doing well with her current dose of anti-depressant Effexor. Plaintiff also reported that she received additional support and help from her mother who lives next door to her. (R. at 366-67.) Psychiatrist Dr. Diwder continued her medication, noting at that time she was in remission from depressive symptoms. (R. at 367.)

In April 2011, Dr. Diwder reported that Plaintiff has continued to take Effexor, even though she has not been seen since September 2010. Plaintiff's cousin has moved in with her, bringing her two young children. Plaintiff reported that she is remaining fairly calm though her household hours and meal planning have changed. (R. at 577.) Plaintiff reported mood is okay, energy is good, appetite is stable, good and she was sleeping well. She was taken off of Adderall and reports she is not able to focus or concentrate. (*Id.*) On mental status examination, Dr. Diwder reported adequate hygiene, good eye contact, her thought process was described as "logical, but distracted at times, forgetting what she wanted to say." (R. at 577.) Her thought

13

content was reality based, mood was good, affect was broad, and she was cooperative with decreased attention and concentration otherwise intact.  Dr. Diwder prescribed Adderall for ADD.  (R. at 578.)

### 2.  Mel Zwissler, Ph.D./Cynthia Waggoner, Psy.D. - State Agency Evaluations

On February 7, 2011, after review of Plaintiff's medical record, Dr. Zwissler,  a state agency psychologist, assessed Plaintiff's mental condition.  (R. at 81-83.)  Dr. Zwissler opined that Plaintiff would be limited to mild restrictions of daily activities and have mild difficulties in maintaining social functioning and in maintaining concentration, persistence and pace.  (R. at 83.)  He further determined that the evidence did not establish the presence of the "C" criteria. (*Id.*)  Dr. Waggoner reviewed the record on July 6, 2011 and determined that Plaintiff would be limited to mild restrictions of daily activities and have mild difficulties in maintaining social functioning; but would have moderate difficulties in maintaining concentration, persistence and pace.  (R. at 95-96.)  She noted the MRFC[2] is an adaption of the ALJ's MRFC dated August 6, 2009, from her first determination on her supplemental security income.  (R. at 99.)  Dr. Waggoner noted that the ALJ from the first determination limited Plaintiff to unskilled work, involving 1-3 step tasks, with few rigid deadlines.  (R. at 100.)  Dr. Waggoner also noted that Plaintiff is still continuing to receive mental health treatment.  She reports issues related to her ADHD still, but is capable of caring for her 4 children and managing her household.  (*Id.*)  Dr. Waggoner concluded that "there does not appear to be any significant change for better or worse in the severity of [Plaintiff's] mental health conditions since the time of the ALJ [decision].

---

[2]"MRFC" is an residual functional capacity which limits its consideration to mental capabilities.

## IV. THE ADMINISTRATIVE DECISION

On September 18, 2012, ALJ Bailey-Smith issued her decision. (R. at 7-21.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially gainful activity since October 26, 2010. (R. at 12.) The ALJ found that Plaintiff had the severe impairments of cervical and lumbar degenerative disc disease, osteoarthritis of the knees, right shoulder partial supraspinatus tear, bilateral carpal tunnel syndrome, Achilles tendonitis, diabetes mellitus type II, obesity, status post hernia repairs, benign hypertension, obstructive sleep apnea, asthma, anxiety, major depression, and history of attention deficit disorder.[4] (*Id.*) She further found that Plaintiff did not have an impairment or combination of

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[4] In his August 2009 determination, ALJ Hafer found that Plaintiff suffered from the following severe impairments:

degenerative disc disease of the lumbar spine at L1-2 and L5-S1; obesity; degenerative joint disease of the left knee; heel spurs right ankle; status post hernia repair; bilateral carpal tunnel syndrome; asthma; benign hypertension; history of

15

impairments that met or medically equaled one of the listed impairments described in 20 C.F.R.

Part 404, Subpart P, Appendix 1.  (R. at 13-15.)  At step four of the sequential process, the ALJ

evaluated Plaintiff's residual functional capacity ("RFC").  The ALJ found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can occasionally stoop, kneel, crouch, crawl, climb, and reach overhead and can frequently operate hand controls and perform fine or gross manipulation bilaterally.  She can never work at ladders, ropes, scaffolds, unprotected heights, or around dangerous machinery.  She must avoid constant exposure to dust, fumes, gases, and other common respiratory irritants.  She can perform unskilled work involving 1-3 step tasks with few rigid deadlines.

(R. at 15.)  The ALJ found the RFC determination of the prior administrative decision to be

binding as to Plaintiff's RFC in accordance with *Drummond v. Comm'r of Social Security*, 126

F.3d 837 (6th Cir. 1997), and Acquiescence Ruling 98-46 ("AR 98-4(6)").[5]  (R. at 16.)   The ALJ

found that although there new evidence of additional diagnoses, the new diagnoses did "not

---

> attention deficit disorder; dysthymia; and generalized anxiety disorder.

(R. at 60.)

[5]ALJ Hafer's previous RFC determination was worded slightly differently but he found the same limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 416.967(b).  Specifically, the claimant can lift and/or carry 10 pounds frequently and 20 pounds occasionally; sit, stand, or walk 6 hours each per 8 hour period; occasionally stoop, kneel, crouch, crawl, and climb; never work at unprotected heights; never work around dangerous machinery; no work in constant exposure to dust, fumes, gases, and other common respiratory irritants; and no work requiring more than frequent operation of hand controls, fine or gross manipulation bilaterally; and no more than occasional overhead reaching.  The claimant also is limited to unskilled work, involving one to three step tasks, with few rigid deadlines.

(First Determination, ALJ Hafer's RFC, R. at 63-64.)

cause additional limitations not already contemplated in the residual functional capacity."  The

ALJ concluded that the new evidence did not "demonstrate sufficiently changed circumstances

regarding her other diagnoses to provide a basis for a different" RFC finding.  (*Id.*)  In reaching

this determination, the ALJ assigned "some" and "great" weight to the opinions of state-agency

Drs. Jackson-Smoot and Waggoner, respectively, finding their assessments consistent with

Plaintiff's examination findings, treatment history, activities of daily living.  (R. at 19.)  In

applying *Drummond*, the ALJ summarized her conclusions as follows:

> The weight of the evidence demonstrates that the claimant has not experienced a
> significant change for the better or worse in the severity of her physical and mental
> condition since the prior ALJ's decision.  Therefore, pursuant to the *Drummond*
> ruling in AR 98-4, the undersigned adopts the findings of the previous ALJ decision
> in the residual functional capacity listed above.

(R. at 19.)

Relying on the VE's testimony, the ALJ determined that jobs exist in significant numbers

in the state and national economy that Plaintiff can perform.  (R. at 19-20.)  She therefore

concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 20.)

## V.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.

1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision

of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial

right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746

(6th Cir. 2007)).

## VI.   ANALYSIS

In her Statement of Errors, Plaintiff contends that ALJ Bailey Smith erred in her

application of *Drummond* by concluding that she was bound by ALJ Hafer's prior RFC

determination.  Plaintiff stresses that the record contains significant new evidence that

demonstrates changed circumstances.  Plaintiff also contends that ALJ Bailey Smith erred by not

finding a more restrictive RFC based on new and material evidence.  Plaintiff argues that the

ALJ did not adjust the RFC to account for the deteriorating and worsening of her existing

conditions.  Next, Plaintiff contends that ALJ Bailey Smith erred by finding that any new and

material evidence received in relation to Plaintiff's current application for disability benefits did

not significantly alter the findings of the RFC as set forth by ALJ Hafer.  Plaintiff next argues

that the ALJ incorrectly found that Plaintiff had only mild restrictions in activities of daily living

and that she based her daily activity finding on mischaracterized testimony.  Plaintiff also

challenges aspects of ALJ Bailey Smith's credibility assessment.  Finally, Plaintiff argues that

the ALJ failed to rely on substantial evidence when determining Plaintiff's ability to attend work

by failing to include a limitation that Plaintiff would miss more than one day a month in the

RFC.  (ECF No. 13).  The Undersigned addresses Plaintiff's interrelated contentions of error

below.

**A.**      **Application of *Drummond* Generally**

In her first contention of error, Plaintiff contends that the ALJ erred in her application of

*Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) and failed to

provide any meaningful analysis of new and material evidence.  In *Drummond,* the United States

Court of Appeals for the Sixth Circuit held that principles of *res judicata* apply to both claimants

and the Commissioner in Social Security cases. 126 F.3d at 841–42.  The *Drummond* Court

specifically held that absent evidence of "changed circumstances" relating to a claimant's

condition, "a subsequent ALJ is bound by the findings of a previous ALJ."  *Id.* at 842.  The Sixth

Circuit further held that when an ALJ seeks to deviate from a prior ALJ's decision, "[t]he burden

is on the Commissioner to prove changed circumstances and therefore escape the principles of

*res judicata.*"  *Id.* at 843.  Applying this approach, the *Drummond* Court concluded that an ALJ

was bound by a previous ALJ's determination that the claimant retained the RFC to perform

sedentary work because evidence did not indicate that the claimant's condition had improved.

*Id.* at 843.

Following *Drummond*, the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98–4(6), 1998 WL 283902, at *3 (June 1, 1998).

After *Drummond* and AR 98-4(6)*,* both the Sixth Circuit and this Court have indicated that when a claimant seeks to avoid application of a prior ALJ's finding, he or she must produce evidence demonstrating that his or her condition has worsened since the time of the prior determination.  *See, e.g., Caudill v. Comm'r of Soc. Sec.,* 424 F. App'x 510, 515 (6th Cir. 2011) (holding that an ALJ was justified, under *Drummond,* in adopting a previous ALJ's finding that the claimant had a "limited education" because the claimant "introduced no new or additional evidence with respect to illiteracy versus limited education" (internal quotations omitted)); *Holt v. Astrue,* No. 1:10–cv–439, 2011 WL 3861891, at *7 (S.D. Ohio July 6, 2011) ("[B]ecause Plaintiff failed to present any new and/or material evidence in the record that showed Plaintiff's condition had worsened since [the] previous unfavorable decision, [the ALJ] acted properly by following *Drummond* and . . . adopting said decision.") (Report and Recommendation later adopted).

Plaintiff contends that new and material evidence, including evidence of new severe impairments, should have compelled a new, more restrictive RFC that would have resulted in Plaintiff being precluded from being able to perform a substantial number of jobs.  She focuses on that aspect of ALJ's decision recognizing new impairments of right shoulder partial supraspinatus tear and cervical degenerative disc disease and faults the ALJ for concluding that these new conditions do not cause limitations over and above those imposed by ALJ Hafer.

The record, however, indicates that ALJ Bailey Smith did consider the new evidence. She found that she was bound by the previous RFC under *Drummond* and AR 98-4(6) because, in effect, she determined that Plaintiff's new impairments together with any evidence of changes in her existing impairments had not significantly changed her limitations.   Plaintiff seems to suggest that ALJ Bailey Smith misunderstood *Drummond* to require her to conform the new evidence so that it would "fit[] within the umbrella of a previous RFC."  (Pl's Stmt. of Errs., ECF No. 13, at p. 16.)  Plaintiff argues that the ALJ committed "confirmation bias" and cherry-picked evidence so as to come up with the same RFC.  While the Undersigned finds no merit to the contention that the ALJ misapplied *Drummond* in this way, Plaintiff's subsequent arguments reveal her true protestation is not that the ALJ failed to actually consider the new evidence. Rather, Plaintiff contends, at bottom, that ALJ Bailey Smith erred when she concluded that the restrictions resulting from Plaintiff's new and existing conditions were already encompassed in

ALJ Hafer's previous determination from August 2009.[6]  The remainder of her contentions of error address Plaintiff's real objections, which the Undersigned analyzes in turn.

**B.      RFC Determination in Light of New and Material Evidence**

Plaintiff contends that ALJ Bailey Smith should have found a more restrictive RFC than the one previously determined by ALJ Hafer based on new and material evidence.  As Plaintiff points out, and Defendant agrees, ALJ Bailey Smith found that Plaintiff suffered from new conditions not previously recognized by ALJ Hafer including a shoulder tear; osteoarthritis of the knees and a left meniscus tear; cervical degenerative disc disease; obstructive sleep apnea, type II diabetes; and depression.   (*Compare* R. at 12 with R. at 61.)  Plaintiff contends that each of these impairments marks a change in circumstances and resulted in new restrictions beyond those already contained in ALJ Hafer's August 2009 RFC finding.

A plaintiff's RFC "is defined as the 'most a [claimant] can still do despite [the claimant's limitations.'" *Sullivan v. Comm'r of Social Sec*., — F. A'ppx—, 2014 WL 6997487 (6th Cir. Dec. 12, 2014) (quoting 20 C.F.R. §§ 404.1545(a)(1)); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009) (plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments.")   The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

---

[6]ALJ Bailey Smith specifically found that the additional diagnoses of right shoulder tear and cervical disc disease "do not cause additional limitations not already contemplated in [ALJ Hafer's RFC]."  (R. at 16.)  She also concluded that the new evidence failed to demonstrate "sufficiently changed circumstances regarding her other diagnoses to provide a basis for a different finding of claimant's [RFC]."  (*Id.*)

The Undersigned concludes that substantial evidence supports the ALJ's conclusion that the new impairments did not impose additional and/or different limitations from those in ALJ Hafer's August 2009 RFC finding.  Plaintiff asserts that her shoulder tear, knee problems and cervical degenerative disease further deteriorated her functional capacity and resulted in greater limitations than those set out in the RFC.  Plaintiff, however, fails to explain what those limitations were and, critically, does not cite to any evidence beyond her subjective beliefs to support this position.  Significantly, no medical source opined that Plaintiff was more limited than the ALJ determined.  *Cf. Watson v. Astrue*, No. 5:11-cv-717, 2012 WL 699788, at *5 (N.D. Ohio Mar. 1, 2012) ("If anything, the dearth of opinions cuts in the Commissioner's favor, as, in the Sixth Circuit, it is well established that . . . the claimant—and not the ALJ—has the burden to produce evidence in support of a disability claim.").

As the record reflects, ALJ Hafer limited Plaintiff to no more than frequent operation of hand controls or fine and gross manipulation because of her carpal tunnel syndrome.  (R. at 71.) He also limited her to no more than occasional reaching overhead because of degenerative disc disease in her lower back.  (*Id*.)  ALJ Bailey Smith maintained these same restrictions to accommodate Plaintiff's right shoulder problems and carpal tunnel syndrome, and limited Plaintiff to light work with only occasional stooping, kneeling, crouching, crawling, and climbing to account, in part to account for Plaintiff's knee problems, cervical degenerative disc disease and her right shoulder issues.  (R. at 17.)

Contrary to Plaintiff's failure to point to objective evidence to support her assertion that the new impairments further restricted her functional capacity, ALJ Bailey Smith supported her findings with substantial evidence.  She referred to the 2009 neck MRI which showed only mild

degenerative disc disease; treatment notes from 2010 to 2012 from Dr. Walter, Plaintiff's

treating physician, that "indicated relatively benign examinations," with intact upper and lower

extremity strength and normal gait and station; and an August 2011 right shoulder MRI that

revealed a partial tear in the shoulder area.  The ALJ emphasized, however, that Dr. Walter

"consistently noted 'functional' right shoulder range of motion, and [that] by June 2012,

[Plaintiff] reported 'stable' shoulder symptoms" (R. at 17, citing R. at 431-57, 551-76, 613-32,

662-67, 671-75, 717-19, 769-73, 796-800).

      Plaintiff also contends that the new severe impairments of sleep apnea and associated

breathing problems, type II diabetes and depression caused additional limitations.  Again,

beyond pointing out the existence of these impairments, Plaintiff directs the Court's attention to

no evidence of record, let alone medical opinions, to support her contention that these

impairments further restricted her functional abilities.  The ALJ, on the other hand, relied on the

fact that Plaintiff's diabetes was "generally well controlled with medications and a diabetic diet,"

and that her "obstructive sleep apnea . . . has not required treatment for several years, suggesting

her symptoms are not disabling."  (R. at 18, citing R. at 443-57, 695-713, 748-68, 805-12).

Noting that Plaintiff failed to provide any medical evidence or even to testify to any functional

limitations from any of these impairments, ALJ Bailey Smith gave Plaintiff "the benefit of the

doubt."  The ALJ found that these impairments, as well as asthma and hypertension, would not

allow any exposure to ladders, ropes, scaffolds, unprotected heights, or dangerous machinery and

permit no constant exposure to dust, fumes, gases, and other common respiratory irritants." (R. at

18).

As to Plaintiff's severe impairment of depression, the ALJ noted that Plaintiff's "mental status examinations, and conservative treatment history suggests that she retains the ability to perform a range of unskilled work."  Based on these determinations, as well as Plaintiff's reported difficulties with attention and concentration, the ALJ limited Plaintiff in the RFC to "unskilled work involving 1-3 step tasks with few rigid deadlines." (R. at 18, citing R. at 366-79, 577-92, 676-80).

The Undersigned concludes that the ALJ's conclusion that Plaintiff's new severe impairments did not cause additional limitations not already contemplated in ALJ Hafer's August 2009 RFC finding is supported by substantial evidence.  *See Schmiedebusch v. Comm'r of Social Sec.*, 536 F. App'x 627, 645–646 (6th Cir. 2013) (affirming ALJ's conclusion under *Drummond* that additional severe impairment and related evidence reflecting little increase in symptomatology since previous ALJ determination did not support a more restrictive RFC assessment).  Accordingly, Plaintiff's second contention of error is not well taken.

**C.     Evidence of Worsening of Existing Impairments**

In Plaintiff's third assignment of error, she contends that the ALJ erred by not reformulating the previous RFC due to worsened existing impairments.  Plaintiff maintains that her existing lower back conditions, carpal tunnel syndrome, and recurrent hernias had worsened since 2009 such that additional and more restrictive RFC limitations were in order.  ALJ Bailey Smith found that substantial evidence did not support this supposition and that Plaintiff's allegations about worsening conditions were not fully credible.  (R. at 17.)

To support this contention of error, Plaintiff recounts in detail the medical evidence, as set forth above, relating to her lower back pain and degenerative disc disease.  She then asserts,

25

without the benefit of citations to the record or medical evidence, that Plaintiff's examinations and radiological tests "suggest greater limitations as follows: greater sitting and standing limitations, and greater crouching, stooping, kneeling, crawling and climbing limitations."  (Pl's Stmt. of Errs., at p. 26.)  She makes similar unsupported assertions with respect to the purported limitations she is experiencing with her carpal tunnel and recurrent hernias.

Even if there were evidence in the record to support Plaintiff's speculation that she required greater limitations, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Social Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quotation marks and citation omitted).   In other words, even if there were evidence to support Plaintiff's position, the ALJ's RFC determination regarding the condition of Plaintiff's existing impairments is supported by substantial evidence.

With regard to Plaintiff's back pain, the ALJ noted that MRIs from 2007 and 2011 were largely unchanged, and that treating notes from 2010 to 2012 showed largely "benign examinations" with intact lower body strength, negative straight leg raises, functional lower back range of motion, and normal gait and station. (R. at 17.)  In terms of Plaintiff's carpal tunnel syndrome, ALJ Bailey Smith noted that "[d]espite [Plaintiff's] reports of continued problems with her right hand . . . examinations from her primary care providers consistently note normal digits and strength.  (*Id*.)  Finally, with respect to Plaintiff's recurrent hernias, the ALJ noted they had reoccurred over a year after the first that she had recovered from each relatively quickly.  The ALJ noted that by February 2011, doctors advised her to return to normal activity. (R. at 17-18).  ALJ Bailey Smith properly accounted for these impairments by incorporating the

limitations from ALJ Hafer's August 2009 RFC finding.  The ALJ's determination that the evidence regarding Plaintiff's existing severe impairments did not demonstrate sufficiently changed circumstances to provide a different RFC finding is supported by substantial evidence. Plaintiff's third assignment of error lacks merit.

**D.      Medical Determinations Outside the Scope of an ALJ's Duties**

Plaintiff asserts that the ALJ made determinations that are reserved for medical experts within the Commission.  She contends that ALJ Bailey-Smith "reviewed the evidence and found that, from a medical perspective, it id not change the previous ALJ's RFC." (Pl's Stmt. of Errs., at 29.)  She challenges the ALJ's finding that any new and material evidence received in relation to Plaintiff's current application for benefits did not significantly alter the previous RFC findings. She also contends that "ALJ Baily-Smith lacked the medical expertise to make this finding.  The state agency program physician makes this determination."  (*Id*.)

The Undersigned rejects Plaintiff's underlying proposition that the ALJ reviewed the findings "from a medical perspective."  A review of the ALJ's decision makes abundantly clear that in making her RFC determination, she weighed and considered the evidence as a whole, including the opinion evidence, the objective evidence, and Plaintiff's credibility.  It is well settled that "ALJ's must not succumb to the temptation to play doctor and make their own independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).  An ALJ, however, reserves the right to decide certain issues, such as a claimant's RFC.  20 C.F.R. § 404.1527(d). Nevertheless, in assessing a claimant's RFC, an ALJ must consider all relevant record evidence,

including medical source opinions on the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a); *see also* Social Security Ruling 96-5p ("some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case; i.e., . . . [w]hat an individual's RFC is").

In this case, the ALJ did not assume the role of doctor; nor did she provide her own independent medical evaluation. Instead, here, state agency psychologists and physicians reviewed the record at both for Plaintiff's initial application for benefits and again for her second application. Upon their first review, the state agency doctors found that Plaintiff could perform a full range of light work. (R. at 81-86.) When they reviewed the record for the second time, they found a more restrictive RFC, and thus adopted ALJ Hafer's August 2009 RFC. (R. at 94-100.) In rendering her own RFC determination, ALJ Bailey Smith considered these assessments and gave them "some" and "great weight," respectively.

The ALJ did not err by making medical determinations outside the record. This assignment of error is without merit.

**E. Challenges to the Assessment of Plaintiff's Credibility**

Within her fifth and sixth assignments of error, Plaintiff challenges the ALJ's credibility on two fronts. First, Plaintiff complains that the ALJ misconstrued and over-emphasized reports and testimony about her daily activities. Second, Plaintiff contends that the ALJ erred in referring to evidence that Plaintiff wanted to be a stay-at-home mom as some evidence of her reasons for not attempting to find work. These objections lack merit.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29,

2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

Plaintiff faults the manner in which the ALJ describes her daily activities, and accuses ALJ Bailey Smith of overstating how well Plaintiff performs them.  Substantial evidence, however, supports the ALJ's conclusions regarding Plaintiff's social and daily activities.  The record indeed confirms, consistent with the findings of the ALJ, that Plaintiff cooked; got her children ready for school and walked them to the bus stop; did laundry and light housekeeping; read; did puzzles; and essentially took care of her four young children independently, among other things.  Although the record contains evidence that Plaintiff received help from her parents with such things as heavy cleaning and disciplining Plaintiff's teenage autistic son, substantial evidence supports the ALJ's assessment of Plaintiff's credibility based in part of her activities of daily living.

To the extent Plaintiff objects to ALJ Bailey Smith's passing reference to it, Plaintiff did make various statements and reports about preferring to be a stay-at-home mother, "suggesting that her reasons for not working are not solely related to her medical condition" (Tr. 18, 50, 209, 366).

Indeed, these factors among other valid considerations support the ALJ's credibility finding.  Reference to Plaintiff's daily activities and evidence of varying reasons for not attempting to find work are just two of several valid reasons the ALJ offered for discounting Plaintiff's credibility.  *Cf. Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (holding that when an ALJ relies on invalid reasons for discounting credibility, it amounts to harmless error so long as substantial evidence exists supporting the ALJ's conclusions on

credibility).  The ALJ also considered other factors, including the overall lack of objective evidence and Plaintiff's history of conservative treatment.

In sum, ALJ Bailey Smith's finding regarding Plaintiff's credibility regarding the severity and disabling effect of her conditions and symptoms was entitled to deference and supported by substantial evidence.  Accordingly, the Undersigned concludes that Plaintiff's contentions of error numbers five and six lack merit.

**F.      Inclusion of Additional Limitations in the RFC for Absences**

Finally, Plaintiff contends that the ALJ failed to evaluate the fact that Plaintiff would miss more than one day per month of work.  The Undersigned disagrees that substantial evidence supports the conclusion that Plaintiff's conditions would have required her to miss more than one day of work per month.  Moreover, Plaintiff makes no effort to cite to any such evidence.

To the extent Plaintiff contends that ALJ Bailey Smith erroneously failed to include this limitation in her hypothetical question to the VE, the Undersigned finds that the ALJ's hypothetical question incorporated all of the limitations the ALJ found credible and supported by the evidence and, therefore, was proper.  In formulating the hypothetical, an ALJ is only "required to incorporate those limitations accepted as credible by the finder of fact."  *Casey v. Secy. of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, the ALJ formulated her RFC based on the limitations she found credible.  Plaintiff fails to identify other evidence supporting additional RFC restrictions that the ALJ found credible.  Accordingly, the

ALJ did not err by not incorporating the VE's testimony about the effect of such absences on the number of jobs available.[7]

## VII.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports ALJ Bailey Smith's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

---

[7] Plaintiff mentions in passing that a sentence six remand is necessary for consideration of new evidence.  Plaintiff has effectively waived this argument.  *See Rice v. Comm'r of Social Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (a plaintiff's failure to develop an argument in a Statement of Errors challenging an ALJ's non-disability determination amounts to a waiver of that argument); *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").  In any event, Plaintiff failed to explain the materiality of the new evidence and makes no effort to demonstrate good cause for her failure to present this evidence to ALJ Bailey Smith, as she is required to do.  42 U.S.C. § 405(g).

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date    February 11, 2015                                  ___/s/ *Elizabeth A. Preston Deavers*___
                                                           Elizabeth A. Preston Deavers
                                                           United States Magistrate Judge

33